MARK D. WELCH   #062427
Name and Prisoner/Booking Number

ARIZONA DEPARTMENT OF CORRECTIONS - DOUGLAS/GILA
Place of Confinement

P.O. BOX 5003
Mailing Address

DOUGLAS, AZ 85608
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

☑ FILED ___ LODGED
___ RECEIVED ___ COPY
JUL 1 4 2014
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

MARK D. WELCH
(Full Name of Plaintiff)                  Plaintiff,

vs.

(1) JOESPH ARPAIO
(Full Name of Defendant)

(2) DAVID SMITH

(3) DR. ALVEREZ

(4) MARICOPA COUNTY, PUBLIC ENTITY,
                                    Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV 13 - 2307 - RNX - JAT
(To be supplied by the Clerk)
(JFM)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
JURY TRIAL DEMANDED

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint
X THIRD AMENDED COMPLAINT

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).
    ☐ Other: _____.

2.  Institution/city where violation occurred: MARICOPA COUNTY JAIL / PHOENIX, AZ

**550/555**

## B. DEFENDANTS

1. Name of first Defendant: _Joseph Arpaio_ . The first Defendant is employed as:
   _Maricopa County Sheriff_ at _Maricopa County Sheriff Office_.
   (Position and Title)                              (Institution)

2. Name of second Defendant: _David Smith_ . The second Defendant is employed as:
   _Maricopa County Manager_ at _____.
   (Position and Title)                              (Institution)

3. Name of third Defendant: _Dr. Alverez_ . The third Defendant is employed as:
   _Correctional Health Services_ at _Maricopa County Sheriff Office_.
   (Position and Title)                              (Institution)

4. Name of fourth Defendant: _Maricopa County_ . The fourth Defendant is employed as:
   _A Public Entity_ at _____.
   (Position and Title)                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?     ☐ Yes     ☒ No

2. If yes, how many lawsuits have you filed? _____ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

Defendants Continued:

5) Ava Arpaio, Joseph Arpaio's wife.

6) Jane Doe Smith, David Smith's wife

7) Jane Doe Alverez, Dr. Alverez's wife.

8) John Doe I-X; Jane Doe I-X
Employed as correctional staff and as correctional Health Services staff for
Maricopa County.

## D. CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated: *THE 8TH AND 14TH AMENDMENT AND 42 U.S.C. (1983)* .

2.  **Count I**. Identify the issue involved. Check **only one**. State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☑ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____ .

3.  **Supporting Facts**. State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    *PLEASE SEE ATTACHED COUNT #1*

4.  **Injury**. State how you were injured by the actions or inactions of the Defendant(s).
    *DOUBLE VISION, HEADACHES, ANXIOTY, VIRTIGO, NECK & SHOULDER PAIN, VETIGO, ECONOMIC LOSS, HEARING, LOSS*

5.  **Administrative Remedies:**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☑ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Count I?   ☑ Yes   ☐ No
    c.  Did you appeal your request for relief on Count I to the highest level?   ☑ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

# COUNT 1

## Events of January 15, 2012 to June 4th 2012

1.      On the afternoon of January 15, 2012, the plaintiff was arrested on the suspicion of aggravated domestic violence.

2.      The plaintiff was discharged form Scottsdale Healthcare Osborn to the care of Scottsdale Police where he would be transferred to Maricopa County jail, where they will provide 24 hour supervision for the plaintiff.

3.      Plaintiff was presented to Maricopa County jail intake at 10:46 pm., January 14<sup>th,</sup> 2012.

4.      During plaintiffs time at intake the defendants were required, and according to CHS's Receiving Screening form, to ask a minimum of seventy four questions, plus potential follow up questions; make more than twenty separate observations about plaintiffs mental and physical condition; and take plaintiffs vital signs.

5.      Upon entering Medical Screening area plaintiff advised defendants that he came directly from Scottsdale hospital with prescriptions and care orders.

6.      Plaintiffs medical screening was conducted by defendant Jane Doe I.

7.      While going through the intake process, plaintiff told several MCSO Detention Personnel, including defendant Jane Doe I, that he was in pain.

8.      Plaintiff also notified MSCO Detention Personnel that he was in need of his prescribed   medication.

9. In spite of plaintiffs complaints to detention personnel and medical staff, his statement that he was in pain and his obvious discomfort plaintiff was placed into isolation.

10. Plaintiff was accepted into the county jail system and after attending a hearing and going through a classification assessment he was moved to the 2nd floor, cell # 8 after midnight on January 16th, 2012, dorm at filing was unknown.

11. Upon information and belief the plaintiff was not seen by a physician, not did he not receive any of the prescribed medications as ordered by trauma Dr, Catherine Foll.

12. Over the course of two or three days time and after scheduled mandatory head counts neither detention personnel nor medical staff had contact with Plaintiff.

13. Only after numerous complaints to detention personnel by inmate Hilario Galaviz, who was assigned to plaintiff's cell, did defendants make contact with plaintiff.

14. At which time plaintiff needed a wheel chair to be transported to correctional medical services where upon arrival emergency medical transport was ordered and plaintiff was rushed back to Scottsdale Health Services which he was immediately admitted to critical care.

15. Based upon the facts described in the discharge summary report from Scottsdale Healthcare Osborn, the plaintiff had a frontal skull fracture, epidural hematoma (which is life threatening), and third nerve palsy and hypomatremia. He is Perrla and EOMI with persistent third cranial nerve damage to the left. He does have diminished hearing on the left as well. The patient continues to have hypomatremia.

16. He will be discharged on Sodium Chloride tablets 1mg. Three times a day, #28 given with a Sodium draw in seven days time. The patient will also be discharged with Meclizine 25mg P.O. Three times a day, #28 given and Percocet 5/325 g. four hours as needed for pain #30 given. The patient is to follow up with Specialist Dr. Tumialan of

Neuro surgery, Dr. Kelish in two weeks for an audiology exam and trauma clinic P.R N. The patient will be discharged in the care of the Scottsdale Police and transferred to county jail where they will provide twenty-four hour supervision for the patient.

17. Upon information and beliefs only after plaintiff was brought back from the Scottsdale Healthcare Osborn was he then brought to Lower Buckeye Jail ("LBJ") where he was placed on twenty-four supervision and given prescribed medications.

18. After approximately seven days he was sent back to Fourth Avenue Jail where he was taken off prescribed medications, all health care needs requests were denied. When Administrative remedies were sought, plaintiff was threatened with promises to make plaintiff miserable.

19. As the facts set forth above demonstrates, the plaintiff suffers from Vertigo, loss of hearing in his left ear, double vision, headaches, neck pain, shoulder pain, anxiety, and will suffer economic damages.

(Defendants Joseph Arpaio and Maricopa County are deliberately indifferent to the medical needs of pretrial detainees in the Maricopa County Jail while subjecting them to conditions that amount to punishment in violation of the eighth and fourteenth Amendment and 42 U.S.C. § 1983.

20 .Plaintiff incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

21. As the facts set forth above do so demonstrate Joseph Arpaio and Maricopa County have a policy; Practice or custom of punishing pretrial detainees by depriving them of constitutionally required care, an/or ratifying such constitutional deprivations.

22. These policies, practices,and customs were the moving force behind plaintiff suffering   and damages.

23. Based on the facts set forth above, Joseph Arpaio knew, or should have reasonably known that his subordinates were engaging in conduct that would deprive the

plaintiff of his constitutional rights and he failed to act to prevent these deprivations, which were the moving force behind the plaintiff suffering damages. Joseph Arpaio is therefore, personally liable as a supervisor of those individuals involved in plaintiff's care, and punitive damages in the amount to be awarded to deter him and others from acting in a similar manner in the future. Joseph Arpaio's actions also form the basis of Municipal liability against the county as he is the final policy maker for Maricopa County.

24.     Additionally, despite the knowledge and notice set forth above, the county was deliberately and callously indifferent to the constitutional rights of those in its care, custody, and control, and has a custom of turning a blind eye towards its employees who depart from the county's policies and procedures and their training and/or ratifies the actions of its employees who violate the constitutional rights of those in their care, custody, and control.

25.     The wrongful conduct of Joseph Arpaio and the county, as described herein, constitutes violations of 42 U.S.C § 1983 and as a direct proximate result of defendants wrongful conduct , plaintiff has suffered damages. **End of Count 1**

## COUNT II

1. State the constitutional or other federal civil right that was violated: *8th And 14th Amendment 42 U.S.C. 1983*

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☑ Medical care

☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation

☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

*Please See Attached Count II*

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

*Please See Attached Count II*

5. **Administrative Remedies.**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☑ Yes    ☐ No

b. Did you submit a request for administrative relief on Count II?     ☑ Yes    ☐ No

c. Did you appeal your request for relief on Count II to the highest level?     ☑ Yes    ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## COUNT 11

26.     Plaintiff incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

27.     Defendants owe a duty to all inmates in their care to provide adequate medical care.

28.     As the foregoing facts demonstrate, defendants breached that duty by providing adequate medical screening, by placing plaintiff in a two man cell in general population by ignoring his order care of twenty-four hour monitoring, and by failing to provide adequate care and in spite of obvious medical condition having plaintiff seen by physician.

29.     Such acts and omissions constitute gross negligence, and caused plaintiff damages in an amount to be proven at trial.

30.     Such acts and omissions demonstrate wanton and willful conduct warranting the imposition of plaintiff damages awarded to deter them, and others from acting in a similar manner in the future.  **End of Count 11**

**COUNT III**

1.  State the constitutional or other federal civil right that was violated: _8ᵗʰ Aɴᴅ 14ᵗʰ Amendment And 42 U.S.C. 1983_

2.  **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☑ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    _Please See Attached Count III_

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    _See Attached Count III_

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Count III?  ☑ Yes  ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level?  ☑ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

# COUNT 111

(Defendants Dr. Alverez and John and Jane Doe I-X violated plaintiffs rights under the fourteenth amendment).

31.     Plaintiff incorporates in the following paragraphs as though fully set forth herein.

32.     Defendant Jane Doe conducted plaintiffs intake medical screening.

33.     Defendant Jane Doe failed to correctly diagnose plaintiffs medical problems, or to complete an adequate screening, and ignored the plaintiffs complaints that he was in need to his prescribed medications.

34.     Defendant Dr, Alverez failed to conduct a medical evaluation of the plaintiff in the Fourth Avenue Jail.

35.     Rather than recognizing the severity of plaintiffs health problems and providing the appropriate medical treatment, defendants Jane Doe I and Dr. Alverez provided inappropriate  treatment leaving plaintiff without prescribed twenty-four monitoring, and medications, leaving him for two to three days with no medical attention.

36.     The wrongful conduct of the defendants, Jane Doe I and Dr. Alverez, constitutes violations of 42 U.S.C. § 1983 in that, with deliberate and callous in difference they deprived plaintiff his eighth and/or fourteenth amendment rights under the United States Constitution, by denying plaintiff proper medical treatment while under the care of these defendants as a result plaintiff suffered damages.

37.     Because defendants conduct is willful and wanton, punitive damages, to be determined by a jury, should be in the future, nerve damage, pain, stress, limited sight, headaches, as well as mental suffering and damages.

38.     Such acts a omissions do so demonstrate wanton and willful conduct warranting the imposition of future damages.  **End of Count III**

# SUMMARY

39    Defendants Jane Doe, John Doe I-X, David Smith, Joseph Arpaio, and Dr. Alverez had a constitutional, statutory and common law duty to ensure the safety and well being of plaintiff while in there care and custody.    A duty that includes, without limitations, providing proper, appropriate and timely care for plaintiff, both during initial intake, and during plaintiff's subsequent stay.

40.    These defendants breached their duties to the plaintiff as it is identified by the claims, facts, and allegations set forth in the paragraphs above.

41.    As a result of these defendants negligence, plaintiff has been in continued pain, double vision, hearing loss, and will continue to suffer.

42.    At all material times, Joe Arpaio was the duly elected Sheriff of Maricopa County, action under color of state law, and in charge of the Maricopa county Sheriff's Office ("MCSO").    Sheriff Arpaio is named in his capacity, for the purposes of plaintiff's Federal Municipal Capacity Claims, and in his individual capacity, for purposes of plaintiff's claims against him individually under 42 U.S.C. § 1983.

43.    Defendant Maricopa County ("The County"), is a public entity, formed and designed as such pursuant to Title 11 of the Arizona Revised Statutes and, as permitted by State and Federal Law, may be held independently or vicariously liable, or otherwise responsible, for the wrongful conduct of it's divisions, agents, officers, and employees.

44.    Defendant John Doe I is the intake officer at MCSO's intake facility who conducted plaintiff's intake and made notes on booking record form 5000-069 R 9/95.

45.    Defendant Jane Doe I, is the medical provider at MCSO's intake facility who conducted plaintiff's intake medical screening.

46.    Defendant David Smith and Jane Doe Smith are a married couple residing in Maricopa County, Arizona.  All of David Smith's alleged acts were done for the benefit of Smiths marital community.


47.    At all material times, David Smith was the duly appointed manager of Maricopa County, under color of State Law, and in charge of managing Maricopa County. David Smith is named in both his official capacity for purposes of plaintiff's claims against him individually under 42 U.S.C. § 1983.


48.    Defendant Dr. Alverez in the Medical Provider Supervisor for Correctional Health Services at MCSO's facilities.


49.    Upon information and belief Dr. Alverez and Jane Doe Alverez are married and live in Maricopa County, Arizona.  All of alleged acts were done for the benefit and furtherance of the Alverez Medical Community.


50.    At all times material herein, defendants John Doe I-X and Jane Doe I-X were officers, agents, and employees of Joseph Arpaio, MCSO, acting within the scope of their employment and under color of law.  These defendants engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of plaintiffs rights.


51.    The true names, capacities, and relationships, whether individual or otherwise, of all John and Jane Doe defendants are unknown at the time of filing of this complaint, and are being designated pursuant to Arizona R. Civ. P. § 10(F) and applicable Federal and State Law.  Plaintiff further allege that all of the fictitiously named defendants were jointly if not individually responsible for the actions, events, and circumstances underlying this law suite and that they caused the damages stated in this complaint. The plaintiff will amend the complaint to name the true names of the defendants through the discovery who may be liable for the acts or omissions set forth in this complaint.

## FACTUAL ALLEGATIONS

.    52.    Pursuant to A.R.S. §§ 11-441 (A) (5) and 31-101, Sheriff Arpaio's duty is to take charge of and keep the County Jail inmates in the County Jail.

53.    Sheriff Arpaio is the final policy maker for the county and, therefore, the county is liable, under 42 U.S.C. § 1983, for Sheriff Arpaio's unconstitutional policies, procedures, and/or customs.

54.    Notwithstanding Sheriff Arpaio's constitutional duties, assists Sheriff Arpaio in meeting his responsibility to provide adequate medical care for the inmates of the County Jail through a division of the County known as Correctional Health Services ("CHS).

**Defendants have extensive notice and knowledge
that the county's jails are not providing constitutionally
acceptable medical care to their inmates**

55.     Prior to August 6, 2012, both Maricopa County and Sheriff Arpaio were aware of a long history of deliberate indifference to the provisions of medical care to those in the County's Jails and "long overdue, constitutionally required corrections that needed to be made as quickly as possible".  This allegation is supported by the following facts:

a.     In 1977, a class action (Hart v. Hill) was brought against Maricopa county in a matter now captioned Graves v. Arpaio, et al., related to unconstitutional conditions in the Maricopa County Jails.  An amended judgment was filed in that case on January 10, 1995, which states that " Defendants shall provide a screening of each pretrial detainee prior to placement of any pretrial detainee in the general population.  The screening will be sufficient to identify and begin necessary segregation, and treatment of those with mental or physical illness.  All pretrial detainees confined in the jails shall have access to medical services and facilities which conform to the standards designated as 'essential' by the National Commission on Correctional Health Care (NCCHC) standard for health services amended from time to time.  When necessary, pretrial detainees confined in jail facilities which lack such services shall be transferred to another jail or other location where such services or health care facilities can be provided or shall otherwise be provided with appropriate alternative on-site medical services.  Defendants shall provide emergency transportation services to an appropriate hospital or medical facility, without reasonable delay, when needed.  Notwithstanding this order, defendants deliberate indifference to the medical needs of it's prisoners continue.

b.     On January 11, 1996, Dr. Michael Pruisis prepared a report entitled " Maricopa County Jail: A review of health care" for the United States Department of Justice ("DOJ).  Dr. Pruisis' report noted the inadequacy of intake medical screening in the jails and the pressures to rush inmates through the screening process.  The reviews of several inmates' deaths, which Dr. Pruisis explained were caused by misdiagnosis, inadequate screening, delayed treatment, and a lack of available physicians.  Moreover, the report stated that "There is a lack of staff, and nurses often make decisions that should be made  by doctors, resulting in numerous mistakes in diagnosis and treatment of serious

illness". Commenting on the death of one inmate, Dr. Purisis stated that it involved "an inexcusable lack of physicians availability to see this dying patient. The death was probably preventable.

c. Dr. .Pruisis' report further noted that medical records were poorly kept, and that medical staff did not create records that would permit their actions to be understood by others. In one instance, Dr. Purisis noted that "no diagnosis was made in the record it was difficult to determine what the physician was thinking." In another instance, he noted that "The record as a reflection of clinical care did not appropriately reflect the condition of this patient ..... This makes it difficult to follow the course of treatment".

d. On March 25, 1996, the DOJ sent a letter to Maricopa County Guard of Supervisor Chairman, Ed King, and Sheriff Arpaio, documenting it's findings from an investigation that began on August 8, 1995, that investigation concluded that there is"Insufficient access to medical Care" in the Maricopa County Jail. The DOJ specifically found that there is "Inadequate medical screening in intake. Identifying serious medical and psychiatric problems is a vital component of the process of admitting a new prisoner into the jails. That process, however, is seriously deficient". The DOJ's findings also include the determination that medical providers at the jails lack access to inmates medical records.

e. Following the DOJ's letter and investigation, the DOJ filed an action against Maricopa County captioned United States of America v. County of Maricopa et. al., CV99-2137-PHX-SLV. A settlement agreement in that matter was executed by both Sheriff Arpaio and the then Chairman of the Maricopa County Board of Supervisors. That agreement states it's intention to "Resolve the United States' allegation of constitutionally inadequate medical care for inmates at the Maricopa County Jails" identified by the "Investigation that was commenced on August 8, 1995, under the Civil Rights of Institutionalized Persons Act."

f. On October 22, 2008, the court in Graves entered it's findings of fact and conclusions of Law and Order. Those findings of facts and conclusions of law related to conditions existing in the jails. As of May 31, 2008, the court found that "The intake screenings at the jails often does not capture basic and necessary information from detainees, including an adequate history from those suffering from chronic diseases". The

court further found that "Systemic deficiencies in the screening process" exist and, as a result, there " Are continuing and on going violations of pretrial detainees" and "Pretrial detainees frequently are denied access to adequate medical, mental health, and dental care because they do not receive a timely in-prison assessment of the urgency of their need for treatment".

g.    On October 22, 2008, the court in Graves also filed it's second amended judgment, which restated that "Defendants shall provide a receiving screening of each pretrial detainee prior to any placement of any pretrial detainee in the general population. The screening will be sufficient to identify and begin necessary segregation, and treatment of those with mental and physical illness and injury, to provide necessary medication without interruption .... All pretrial detainees confined in the jails shall have ready access to care to meet their serious medical and mental health needs. When necessary, pretrial detainees confined in jail facilities which lack such services shall be transferred to another jail or other location where such services or health care facilities are provide with appropriate on-sight medical services".

h.    On January 28, 2009, the court in Graves ordered "That medical expert Dr. Lambert King and mental health expert Dr. Kathryn Burns are appointed to serve as independent evaluators of the defendants' compliance with the medical and mental health provisions of the Second Amended Judgment and to be compensated by defendants for their services".

I.    On April 7, 2010, the court in Groves held that "As of March 1, 2010, sixteen months after the Second Amended Judgment was entered, sufficient areas of failure to comply with the Second Amended Judgment's medical and mental health requirements remain. Although progress has been made, it appears as though most of the improvements made regarding medical and mental health services have been those imposing little or no additional cost on defendants. Improvements appearing to be most critically needed. eg., developing and implementing electronic medical records and medication, management tools, and increasing staffing, appear to have been disregarded or postponed to added expense .... Previous orders and numerous court proceedings in this matter have emphasized Congress' intent that constitutional violations regarding conditions of confinement be corrected expeditiously and judicial oversight terminated as swiftly as possible. The court has repeatedly informed the parties of the importance of implementing long overdue, constitutionally required corrections as quickly as possible,

both for benefit of the plaintiff class and to avoid expenses incurring by unnecessary delay, because correction of constitutional violations has not proceeded expeditiously to date. The parties and council will be ordered to meet and concur to develop a proposed procedure for achieving and demonstrating defendants' complete compliance with the Second Amended Judgment".

     j.    On August 9, 2011, Dr. Katheryn Burns filed her seventh report in the Graves case. She recommended that CHS conduct a "Quality improvement study focused on the management of arriving inmates that are experiencing withdrawal from drugs and/or alcohol based upon their being in need of medical monitoring and at risk of medical and physiological complications". She noted that in several medical record reviews she had conducted, she found" Serious issues with respect to …. coordination of medical and mental health care including treatment of alcohol and other drug withdrawal".

## CULTURE OF CRUELTY

     56.    In addition to having a history of deliberate indifference to the unconditional and inadequate medical care in the county's jails, the county has turned a blind eye towards the culture of cruelty and punishment Sheriff Arpaio has created in the county's jails. This allegation is supported by the following facts:

     a.    Shortly after he was elected, Sheriff Arpaio announced to his entire staff that he wanted his jails to be "Bad" jails and "Places of Punishment".

     b.    Sheriff Arpaio has publicly stated, " I believe jail should be punishment, period". Sheriff Arpaio has also said, " If it sounds harsh, that's alright, because jail is a harsh place. Jail is not a reward or an achievement, it is punishment". With respect to his promise to make "jails a place of punishment", Sheriff Arpaio has publicly stated, " I did what I said I'd do".

     c.    Regarding the culture he has created for inmates, Sheriff Arpaio has publicly stated, "The Theme, 'Jail is an awful place and I'm never coming back' …. Those words were music to my ears. I wanted the inmates to hate my jail. I wanted them to hate everything about it, from the heat to the food to the work to the drudgery. I wanted them to remember for the rest of their days that this was a terrible experience….' Sheriff Arpaio has further said, :Today, maybe the Maricopa County Jails has become the Alcatraz of Arizona, that might not be such a bad thing".

     57.    Most of the Sheriff's inmates are pretrial detainees.

     58.    The Sheriff and County new that under the United States Constitution it is illegal to "Punish pretrial detainees".

## END OF SUMMARY

## JURY TRIAL

59.    Plaintiff hereby requests and demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE, plaintiff prays for damages for judgment against defendants as follows:**

A)    General damages in an amount to be proven at trial, as to the cause of actions, claims, and theory of relief alleged herein;

B)    Punitive damages against Joseph Arpaio and David Smith, defendant Jane Doe I, Dr. Alverez, in an amount deemed just and reasonable as to the cause of action, claims, and theory of relief alleged herein;

C)    Cost and attorney's fees against all defendants, pursuant to 42-U.S.C. § 1988.

D)    Such other and further relief which may seen just and reasonable under the circumstances.

## E.  REQUEST FOR RELIEF

State the relief you are seeking: _Punitive Damages in Any_
_Amount To Be Determined By A Jury, Legal_
_Costs, Economic Loss, Pain And Suffering_
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _July 9 2014_                    _[signature]_
            DATE                             SIGNATURE OF PLAINTIFF


_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)
_____
_____
_____
(Attorney's address & telephone number)


### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach
no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you
attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.